## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

KARL ANTHONY FRANCIS,

                              Plaintiff,

vs.

TRANSUNION RENTAL SCREENING
SOLUTIONS, LLC,

                            Defendant.

Civil Action No.: 1:19-cv-1185

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Karl Anthony Francis ("Plaintiff"), by and through his attorneys, brings the following Complaint on behalf of himself and the classes set forth below and states as follows:

## INTRODUCTION

1.     This is a class action for damages, costs and attorneys' fees brought against TransUnion Rental Screening Solutions, LLC ("Defendant" or "TURSS") pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

2.     Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to landlords who use the reports to make decisions regarding whether to rent to certain consumers.

3.     Defendant falsely reported to Plaintiff's potential landlord that Plaintiff is a serial criminal. Plaintiff is not a serial criminal.

4.      Defendant's inaccurate reporting cost Plaintiff his ability to rent the property of his choice, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

5.      Defendant's inaccurate report could have been easily remedied had Defendant consulted the current public record prior to issuing Plaintiff's report to his prospective landlord.

6.      Defendant does not employ reasonable procedures to ensure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being inaccurate.

7.      As a result of Defendant's conduct, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings a claim for failure to use reasonable procedures to ensure maximum possible accuracy based on § 1681e(b) of the FCRA.

## THE PARTIES

8.      Plaintiff Karl Anthony Francis is a natural person who resides in Arlington, Virginia, and who is a "consumer" protected by the FCRA.

9.      Defendant TransUnion Rental Screening Solutions, LLC ("TURSS") is a Delaware corporation doing business throughout the United States, including in the State of Virginia, and has a principal place of business located at 5889 South Greenwood Plaza Boulevard, Suite 201, Greenwood Village, CO 80111.  TURSS is a wholly-owned subsidiary of TransUnion, LLC, which is wholly owned by TransUnion Intermediate Holdings, Inc.

10.     Among other things, Defendant sells consumer reports, often called background checks and credit reports, to landlords for their use in deciding whether to rent to a prospective tenant. These reports are sold to landlords in connection with a business transaction initiated by the consumer.

11.     Defendant is a consumer reporting agency as defined at 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in whole or in part in the practice of assembling and/or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

14.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting. It regulates all consumer reports such as the tenant screening report prepared in Plaintiff's name.

15.     In the parlance of the FCRA, background checks, including tenant screening reports,  are "consumer reports," and providers of background checks like TURSS are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d), (f).

16.     The FCRA provides a number of protections for housing applicants who are subject to background checks.

17.     The FCRA imposes duties on consumer reporting agencies to ensure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

18.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

## FACTS
### Defendant's Inaccurate Tenant Screening Report

19.     In early February 2019, Plaintiff and his wife, Elisabeth Farny ("Ms. Farny"), sought to rent an apartment in Alexandria, Virginia.

20.     In looking for a rental property, Plaintiff and Ms. Farny found only one that met their needs, an apartment unit at the Reserve at Potomac Yard Apartments ("Potomac Yard") in Alexandria, Virginia.

21.     Plaintiff and Ms. Farny had a preference for renting at Potomac Yard because it was in a convenient location. In early February 2019, Ms. Farny had accepted a promising new job offer in Alexandria and had to relocate from Washington, D.C., while Plaintiff had accepted a promising job offer in Maryland and had to relocate from Pennsylvania. Potomac Yard was centrally located and was only a five minute walk from Ms. Farny's new place of employment and a 20 minute drive from Plaintiff's new place of employment. And it was an affordable and attractive option given the quality of units and numerous amenities.

22.     Potomac Yard was managed by Equity Residential Management, L.L.C. ("Equity Management").

23.     During the week of February 11, 2019, Plaintiff and Ms. Farny contacted Potomac Yard by telephone and spoke with Equity Management's Leasing Manager, Laura Falletta ("Ms. Falletta"), expressing their interest to rent an apartment unit for approximately $1,600.00 per month.

24.     Sometime during the week of February 11, 2019, Plaintiff and Ms. Farny met with Ms. Falletta at Potomac Yard and were given a tour of the complex and available apartment units. After completing the tour, Ms. Falletta instructed Plaintiff and Ms. Farny to complete a joint rental application online and submit payment, which would cover multiples fees.

25.     Later that same day, Plaintiff and Ms. Farny completed the joint rental application on a computer in Potomac Yard's lobby and submitted it, along with their debit card information for payment of multiple fees, including an apartment unit holding fee, two months' rent, and a security deposit, totaling approximately $3,500.00.

26.     Shortly thereafter, Ms. Falletta presented Plaintiff and Ms. Farny with a copy of the lease, which they both signed, and informed them that they could move into their apartment unit on February 16, 2019.

27.     Immediately thereafter, in preparation for their fast-approaching move-in date, Plaintiff and Ms. Farny ordered furniture for their apartment, including, but not limited to, a bed frame, mattress, dining room table, and chairs. They also set up payment for water, electricity, internet, and cable television service.

28.     Potomac Yard contracted with TURSS to provide tenant screening reports, which are consumer reports also known as background checks, on prospective tenants used to determine whether a prospective tenant was eligible to rent an apartment unit.

29.     On or about February 14, 2019, Potomac Yard obtained a consumer report regarding Plaintiff from TURSS, which it calls a "Resident Screening Report" ("the Report"), which included a compilation of Plaintiff's credit report, a criminal record report, and eviction report.

30.     The Report is a consumer report regulated by the FCRA.

31.     The "Criminal Report" section of the Report included false information about three separate criminal cases, including multiple charges, *none* of which pertain to Plaintiff Karl Francis.

32.     The report included the following information about the first criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15005435
Jurisdiction Description: ESSEX

Charge Sequence Id: 1
Charge    Description:    TERRORISTIC    THREATS-THREATEN
IMMINENT DEATH-PURP FEAR
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: DISMISS PLEA BARG
Plea Guilty Indicator: false
Plea No Contest Indicator: false

Charge Sequence Id: 2
Charge    Description:    POSS    OF    WAEPON    FOR    UNLAWFUL
PURPOSE-OTHER WEAPON
Charge Disposition Date: 2016-08-23
Plea Negotiated Indicator: false
Plea Description: GUILTY PLEA AS CHARG

Please Guilty Indicator: true
Please No Contest Indicator: false

Charge Sequence Id: 3
      Charge Description: UNLAWFUL POSS WEAP - OTHER WEAPONS
      Charge Disposition Date: 2016-08-23
      Plea Negotiated Indicator: false
      Plea Description: DISMISS PLEA BARG
      Plea Guilty Indicator: false
      Plea No Contest Indicator: false

Appealed From Lower Court: false

33.    The report included the following information about the second criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court
DOB: N/A
Age: N/A
SSN: N/A
Residence: N/A
Aliases: no aliases found
Sex: U
Person Physical Features: No Physical Features listed
Activity Type: CRIMINAL/TRAFFIC
Court Record Id: 15001885
Jurisdiction Description: ESSEX

Charge Sequence Id: 1
      Charge Description: CREDIT CARD CRIMES-POSSESS MATERIAL ETC USE IN SCANNER
      Charge Disposition Date: 2016-08-23
      Plea Negotiated Indicator: false
      Plea Description: DISMISS PLEA BARG
      Plea Guilty Indicator: false
      Plea No Contest Indicator: false

Charge Sequence Id: 2
      Charge Description: OBTAIN/POSSESS A SYNTHETIC CANNABINOID
      Charge Disposition Date: 2016-08-23
      Plea Negotiated Indicator: false
      Plea Description: GUILTY PLEA AS CHARG

Plea Guilty Indicator: true
Plea No Contest Indicator: false

Charge Sequence Id: 3
     Charge Description: RECEIVING STOLEN PROP-KNOW PROP STOLEN-VAL 500-74999 ETC
     Charge Disposition Date: 2016-08-23
     Plea Negotiated Indicator: false
     Plea Description: DISMISS PLEA BARG
     Plea Guilty Indicator: false
     Plea No Contest Indicator: false

Appealed from Lower Court: false

34.    The report included the following information about a third criminal case that was misattributed to Plaintiff:

Dataset: NJ Superior Court
Dataset: NJ Superior Court
     DOB: N/A
     Age: N/A
     SSN: N/A
     Residence: N/A
     Aliases: no aliases found
     Sex: U
     Person Physical Features: No Physical Features listed
     Activity Type: CRIMINAL/TRAFFIC
     Court Record Id: 14004387
     Jurisdiction Description: ESSEX

Charge Sequence Id: 1
     Charge Description: TERRORISTIC THREATS-THREATEN IMMENT DEATH-PURP FEAR
     Charge Disposition Date: 2016-11-01

Appealed from lower court: false

35.    TURSS's reporting was false. The aforementioned criminal charges and guilty dispositions from Essex County should not have been included in Plaintiff's Report.

36.    Plaintiff has never been charged with or convicted of any of the aforementioned criminal offenses.

8

37.     Any member of the public who took a five minute cursory review of Plaintiff's public record could confirm the flaw in the TURSS report about Plaintiff because contrary to Defendant's representation in its reports that the original public records did not contain a date of birth, in fact, all of the original public records do contain a date of birth. Specifically, the original public records contain a date of birth which has a different month, day and year from Plaintiff's date of birth. The year of birth on the original public records is 1990. Plaintiff was born 28 years earlier, in 1962.

38.     It is indisputable that prior to supplying the report about Plaintiff to Potomac Yard, TURSS failed to consult current public records in Essex County, New Jersey, which indicate that the aforementioned criminal charges and guilty dispositions belong to Plaintiff's *son*, named Karl Anthony Francis ("Convicted Misdemeanant Karl Francis"). Had TURSS actually consulted or obtained the underlying court records, it would have seen an obvious discrepancy between Convicted Misdemeanant Karl Francis and Plaintiff.

39.     On February 15, 2019, Ms. Farny received a telephone call from Ms. Falletta informing her that Potomac Yard received Plaintiff's background check and that there was an issue with his criminal history. Ms. Farny immediately asked what the issue was and Ms. Falletta informed her that Plaintiff's background check indicated that he had a significant criminal record. Ms. Farny told Ms. Falletta that Plaintiff did not have a significant criminal record and that there must have been a mistake. Ms. Falletta stated that she would investigate the background check issue further and get back to Ms. Farny the following day with more information. However, Ms. Falletta informed Ms. Farny that she and Plaintiff would no longer be allowed to move into their unit at Potomac Yard on February 16, 2019, as previously agreed.

40.     Upon speaking with Ms. Farny about her call with Ms. Falletta, Plaintiff was humiliated that his potential landlord now thought he was a serial criminal, especially considering that he had truthfully stated in the joint rental application that he was not.

41.     Later that same day, Ms. Farny received email correspondence from Ms. Falletta, on behalf of Equity Residential, stating that she and Plaintiff's joint rental application had been denied.

42.     On February 16, 2019, Ms. Farny received a follow-up telephone call from Ms. Falletta. Plaintiff got on the phone, stated that they were being denied an apartment based upon false criminal record information belonging to his son who was born 28 years after him, and demanded contact information for the company who prepared his background check. Ms. Falletta stated that she was bound by the information contained within TURSS's report and that he needed to contact TURSS if he wanted to discuss the information in his report. She then provided Plaintiff with TURSS's telephone number.

43.     On February 18, 2019, having still not seen a copy of the Report, Plaintiff placed a telephone call to TURSS and spoke with a male representative. After providing his identification information, Plaintiff informed the representative that he had recently applied for housing at Potomac Yard and it had been brought to his attention that TURSS completed a background check in his name that contained inaccurate criminal record information. Plaintiff informed the representative that he was calling to dispute the inaccurate criminal record information contained within his background check and requested that TURSS reinvestigate and provide him with an updated copy of his report.

44.     On February 20, 2019, with the assistance of counsel, Plaintiff sent a 15 U.S.C. § 1681g file request to TURSS.

45.     On February 21, 2019, Plaintiff received email correspondence from TURSS, which read:

> We received you request for investigation regarding your potential criminal history on 02/16/2019. After further investigation, our findings show the records in our database under 15005435, 15001885 and 14004387 have been confirmed as inaccurate or incomplete public record information based on the following additional record details obtained from the New Jersey, Essex County Superior Court – Criminal website.
>
> On 02/19/2019 we confirmed the records 15005435, 15001885 and 14004387 **do not match your personal identifying information.**
>
> Based on the additional record details obtained from the New Jersey, Essex County Superior Court – Criminal website our office has suppressed this data from your consumer file as a preventative measure and the data will not show on a future criminal background screening from TransUnion Rental Screening Solutions. A copy of the updated report has been enclosed.

(emphasis added).

46.     On February 28, 2019, TURSS responded to Plaintiff's 15 U.S.C. § 1681g file request and enclosed two documents: 1) the aforementioned copy of Plaintiff's Report, created on February 14, 2019, which falsely reported Plaintiff as a convicted criminal, and 2) an Application Summary, created on February 28, 2019, which indicated that no criminal records were found in his name.

47.     After Potomac Yard denied Plaintiff's joint rental application, he suffered the following economic damages: 1) his $200 security deposit was never refunded; 2) his water and electricity, internet, and cable television fees for the month of February 2019 were never refunded; and 3) he had to pay a fee to return all of the apartment furniture he ordered from Amazon.

48.     As a result of the erroneous information contained within TURSS's Report, Plaintiff and Ms. Farny had to continue living in her apartment in Washington, D.C., forcing her to spend a significant amount of additional time each morning commuting to her new job in

Alexandria, Virginia via public transit. Plaintiff and Ms. Farny also spent another month searching for places to rent before they found an apartment in Arlington, Virginia in March 2019.

49.     But for TURSS's false Report, Plaintiff's joint rental application would have been accepted by Potomac Yard and he and Ms. Farny would have been allowed to move into the unit they desired to rent on February 16, 2019, as originally scheduled.

50.     TURSS has been sued many times for its failure to use reasonable procedures to assure that the rental-purposed consumer reports it sells are maximally accurate. TURSS knows that its process for obtaining and accurately reporting, updating, and investigating criminal public records is so shoddy that it leads to material inaccuracies. TURSS's parent company, TransUnion, has been admonished by at least one federal court that it doesn't comply with the FCRA.

51.     Among many other cases, for instance, a jury recently returned a verdict in favor of plaintiffs against TransUnion for its failure to use reasonable procedures to assure maximum possible accuracy in erroneously reporting that the plaintiffs in that case were terrorists, money launderers, and narcotics traffickers on the Office of Foreign Asset Control's "blocked persons" list. *Ramirez v. TransUnion, LLC*, No. 3:13CV632 (N.D. Cal.).

52.      The injuries suffered by Plaintiff as a direct result of TURSS's erroneous reporting are the type of injuries that the FCRA was enacted to address.  At common law, TURSS's conduct would have given rise to causes of action based on defamation and invasion of privacy.

53.     As a direct result of TURSS's conduct, Plaintiff has suffered these injuries resulting in damages, including the inability to rent the unit he desired, the expenditure of time and money looking for another unit and trying to correct TURSS's erroneous Report; damage to his reputation; physical injury as a result of emotional distress; damage to his relationship with his wife; loss of

sleep; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, frustration, humiliation, and embarrassment; and other losses that are continuing in nature.

## CLASS ACTION ALLEGATIONS

54.     Plaintiff brings Count I as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Inaccurate Matching Class, defined as:

> All individuals on whom Defendant prepared erroneous consumer reports including criminal records, where the information was included on the report based on a name match, to the exclusion of a match based on date of birth.  The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

55.     Plaintiff also brings Count I as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Verified Disputes Class, defined as

> All individuals on whom Defendant prepared erroneous consumer reports including criminal records, where the information that was included on the report was subsequently removed based a dispute made by the consumer.  The class begins on the date two years prior to the filing of this Complaint and ends on the date the class list is prepared.

56.     Class certification is appropriate under Fed. R. Civ. P. 23(a).

57.     <u>Numerosity:</u>   The classes are so numerous that joinder of all class members is impracticable.  Given the volume of Defendant's business, there are hundreds or thousands of class members.

58.     <u>Typicality:</u> Plaintiff's claims are typical of the members of the classes.  It is typical for Defendant to match consumers to criminal records using name  to the exclusion of date of birth. The FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and Defendant treated Plaintiff consistently with other class members in accordance with its standard policies and practices.

59.     <u>Adequacy:</u> Plaintiff will fairly and adequately protect the interests of the classes

because he and his experienced counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the classes.

60.     Commonality:  This case presents common questions of law and fact, including but not limited to:

a.  Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal convictions based on a name-only match;

b.  Whether Defendant's violations of the FCRA were willful; and

c.  The proper measure of damages.

61.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because, *inter alia*, questions of law and fact common to the classes predominate over any questions affecting only individual members of the classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

62.     In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

14

63.     Yet, the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action. The administration of this action can be handled by class counsel or a third-party administrator, and the costs of administration will represent only a small fraction of the ultimate recovery to be achieved.

64.     Plaintiff intends to send notice to all members of the classes to the extent required by Rule 23(c)(2).  The names and addresses of the class members are available from Defendant's records.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(On Behalf of Plaintiff, the Inaccurate Matching Class and the Verified Disputes Class)**

65.     Plaintiff relies on the factual allegations in this Complaint, which are the factual bases of each cause of action herein.

66.     Defendant violated 15 U.S.C. § 1681e(b) by preparing a consumer report relating to Plaintiff without following reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

67.     Defendant willfully violated 15 U.S.C. § 1681e(b) in that its actions were in reckless disregard of the requirements of this provision. Thus, Defendant is liable for punitive damages pursuant to 15 U.S.C. § 1681n.

68.     In the alternative, Defendant negligently violated 15 U.S.C. § 1681e(b), which entitles Plaintiff to a recovery under 15 U.S.C. § 1681o.

69.     Pursuant to 15 U.S.C. § 1681o and § 1681n, Plaintiff is entitled to actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

70.     WHEREFORE, Plaintiff prays for relief as follows:

a.  Determining that this action may proceed as a class action under Rule 23;

b.  Designating Plaintiff as the class representative for the classes;

c.  Designating Plaintiff's counsel as counsel for the classes;

d.  Issuing proper notice to the classes at Defendant's expense;

e.  Determining that Defendant negligently and/or willfully violated the FCRA;

f.  Awarding actual damages, statutory damages, and punitive damages as provided by the FCRA;

g.  Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

h.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

71.     Plaintiff demands a trial by jury.

By:     /s/ Casey S. Nash
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey S. Nash, Esq., VSB #84261
**KELLY GUZZO, PLC**
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com

16

Email: casey@kellyguzzo.com
*Counsel for Plaintiff*